UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:
_____

|  |  |
|---|---|
| THE UNITED STATES ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 23-cv-00040 |
| v. ) | |
| ) | |
| FORTUNE ENERGY, INC. ) | |
| D/B/A FORTUNE ENERGY USA ) | |
| AND/OR FORTUNE ENERGY ) | |
| WHOLESALE LLC ) | |
| ) | |
| Defendant. ) | |

## **COMPLAINT**

The United States, by and through its undersigned attorneys, hereby brings this action and alleges the following:

1. This is an action to recover civil monetary penalties pursuant to 19 U.S.C. § 1592, relating to eleven (11) customs entries of aluminum extrusions.

2. This Court has exclusive jurisdiction to entertain this action pursuant to 28 U.S.C. § 1582.

3. Plaintiff, the United States, through U.S. Customs and Border Protection (CBP), is charged with fixing the final amount of duty to be paid on imported merchandise and determining any increased or additional duties, taxes, and fees due or any excess of duties, taxes, and fees deposited, among other responsibilities. 19 U.S.C. § 1500(c).

4. At all times relevant to the matters described in this complaint, defendant, Fortune Energy, Inc., upon information and belief, was incorporated in the State of Delaware, with a principal business address of 2290 Agate Ct. Suite A and B, Simi Valley, CA 93065 and an alternative business address of 21029 Itasca St. Suite A and B, Chatsworth, CA 91311.  Upon information and belief, Fortune Energy Inc. now operates under the business name of Fortune Energy USA and/or Fortune Energy Wholesale LLC. Fortune Energy Inc's website, https://www.fortuneenergy.net/, includes language that identifies the company as Fortune Energy USA and Fortune Energy Wholesale LLC. According to records from the California Secretary of State, Fortune Energy Wholesale LLC is incorporated in California and registered at the same principal business address as Fortune Energy Inc.:  2290 Agate Ct. Suite A and B, Simi Valley, CA 93065.  Fortune Energy, Inc. is a distributer of solar products.

5. Fortune Energy, Inc. served as the importer of record for the eleven (11) entries covered by this court action (hereinafter, referred to as the "subject entries"), which are identified in the loss of revenue calculation summary attached as Exhibit A.

6. Fortune Energy, Inc. filed the subject entries between February 18, 2018 through June 5, 2019, at the Los Angeles/Long Beach, California seaport; the port of Tampa, Florida; the Houston, Texas seaport; and the port of Boston, Massachusetts.

7. The imported merchandise covered by the subject entries (hereinafter, referred to as the "imported merchandise") consisted of Dual Rack products, including products described as the Lite Rail, Swivel Angle Mounting Bracket, Splice Bar, Pipe to Rail, Mid Clamp, End Clamp, and Channel Strut, and Metal Brackets, among others.

Upon information and belief, these products are used for residential solar panel roofing projects.

8. The imported merchandise contained aluminum extrusions.

9. The aluminum extrusions originated in the People's Republic of China (China).

10. During the time period that the imported merchandise entered the United States, aluminum extrusions from the People's Republic of China were subject to antidumping and countervailing duty orders. *See* 76 Fed. Reg. 30,650 (May 26, 2011) (Antidumping Duty Order); 76 Fed. Reg. 30,653 (May 26, 2011) (Countervailing Duty Order) (collectively, the Orders).

11. The aluminum extrusions described within the Antidumping and Countervailing Duty Orders are made up of aluminum alloys, which are identified by a four-digit number designation. Alloys are referred to as part of a series, based on the first number in their designation. For example, an aluminum product made of alloy 5052 is a series 5 product. Alloys are divided into their series based on a number of factors, including their chemical compositions.

12. The designations of alloys are determined by the Aluminum Association, an industry standard-setting group.

13. Pertinent to this complaint are the series 5 and series 6 products.

14. The scope of the Antidumping Duty Order is reflected in the attached Exhibit B, which is incorporated by reference herein, and provides in relevant part as follows:

> The merchandise covered by the order is aluminum
> extrusions which are shapes and forms, produced by an

> extrusion process, made from aluminum alloys having metallic elements corresponding to the alloy series designations published by The Aluminum Association commencing with the numbers 1, 3, and 6 (or proprietary equivalents or other certifying body equivalents). Specifically, the subject merchandise made from aluminum alloy with an Aluminum Association series designation commencing with the number 1 contains not less than 99 percent aluminum by weight. The subject merchandise made from aluminum alloy with an Aluminum Association series designation commencing with the number 3 contains manganese as the major alloying element, with manganese accounting for not more than 3.0 percent of total materials by weight. *The subject merchandise is made from an aluminum alloy with an Aluminum Association series designation commencing with the number 6 contains magnesium and silicon as the major alloying elements, with magnesium accounting for at least 0.1 percent but not more than 2.0 percent of total materials by weight, and silicon accounting for at least 0.1 percent but not more than 3.0 percent of total materials by weight.* The subject aluminum extrusions are properly identified by a four-digit alloy series without either a decimal point or leading letter. Illustrative examples from among the approximately 160 registered alloys that may characterize the subject merchandise are as follows: 1350, 3003, and 6060.

76 Fed. Reg. 30,650 (May 26, 2011).

15. The scope of the Antidumping Duty Order contains several exclusions, which identify products not covered by the Order. 76 Fed. Reg. 30,651 (May 26, 2011).

16. The Antidumping Duty Order excludes series 5 products, among other products, from the scope of the Order. The relevant exclusion provides, in part, as follows:

> The following aluminum extrusion products are excluded: Aluminum extrusions made from aluminum alloy with an Aluminum Association series designations commencing with the number 2 and containing in excess of 1.5 percent copper by weight; *Aluminum extrusions made from aluminum alloy with an Aluminum Association series designation commencing with the number 5 and containing*

> *in excess of 1.0 percent magnesium by weight*; and aluminum extrusions made from aluminum alloy with an Aluminum Association series designation commencing with the number 7 and containing in excess of 2.0 percent zinc by weight.

*Id.* (emphasis added).

17. The scope of the Countervailing Duty Order is reflected in the attached Exhibit C, which is incorporated by reference herein, and provides in relevant part as follows:

> The merchandise covered by the order is aluminum extrusions which are shapes and forms, produced by an extrusion process, made from aluminum alloys having metallic elements corresponding to the alloy series designations published by The Aluminum Association commencing with the numbers 1, 3, and 6 (or proprietary equivalents or other certifying body equivalents). Specifically, the subject merchandise made from aluminum alloy with an Aluminum Association series designation commencing with the number 1 contains not less than 99 percent aluminum by weight. The subject merchandise made from aluminum alloy with an Aluminum Association series designation commencing with the number 3 contains manganese as the major alloying element, with manganese accounting for not more than 3.0 percent of total materials by weight. *The subject merchandise is made from an aluminum alloy with an Aluminum Association series designation commencing with the number 6 contains magnesium and silicon as the major alloying elements, with magnesium accounting for at least 0.1 percent but not more than 2.0 percent of total materials by weight, and silicon accounting for at least 0.1 percent but not more than 3.0 percent of total materials by weight.* The subject aluminum extrusions are properly identified by a four-digit alloy series without either a decimal point or leading letter. Illustrative examples from among the approximately 160 registered alloys that may characterize the subject merchandise are as follows: 1350, 3003, and 6060.

76 Fed. Reg. 30,653-654 (May 26, 2011).

5

18.     The scope of the Countervailing Duty Order contains several exclusions, which identify products not covered by the Order. 76 Fed. Reg. 30,654 (May 26, 2011).

19.     The Countervailing Duty Order excludes series 5 products, among other products, from the scope of the Order. The exclusion provides as follows:

> The following aluminum extrusion products are excluded: Aluminum extrusions made from aluminum alloy with an Aluminum Association series designations commencing with the number 2 and containing in excess of 1.5 percent copper by weight; *aluminum extrusions made from aluminum alloy with an Aluminum Association series designation commencing with the number 5 and containing in excess of 1.0 percent magnesium by weight*; and aluminum extrusions made from aluminum alloy with an Aluminum Association series designation commencing with the number 7 and containing in excess of 2.0 percent zinc by weight.

*Id.* (emphasis added)

20.     The Aluminum Association further describes series 5 products as follows:

> "Magnesium is the primary alloying agent in the 5xxx series and is one of the most effective and widely used alloying elements for aluminum. Alloys in this series possess moderate to high strength characteristics, as well as good weldablility and resistance to corrosion in the marine environment. Because of this, aluminum-magnesium alloys are widely used in building and construction, storage tanks, pressure vessels and marine applications. Examples of common alloy applications include: 5052 in electronics, 5083 in marine applications, anodized 5005 sheet for architectural applications and 5182 makes the aluminum beverage can lid."
>
> The Aluminum Association, *Industry Standards*, ALUMINUM.ORG, https://www.aluminum.org/industry-standards (last visited Feb. 16, 2023).

21.     The Aluminum Association further describes series 6 products as follows:

> "The 6xxx series are versatile, heat treatable, highly formable, weldable and have moderately high strength

6

>   coupled with excellent corrosion resistance. Alloys in this
>   series contain silicon and magnesium in order to form
>   magnesium silicide within the alloy. Extrusion products
>   from the 6xxx series are the first choice for architectural
>   and structural applications. Alloy 6061 is the most widely
>   used alloy in this series and is often used in truck and
>   marine frames. Additionally, certain versions of the iPhone
>   have used 6xxx series aluminum extrusions."

*Id*.

22. From February 18, 2018 through June 5, 2019, Fortune Energy, Inc. entered aluminum extrusions into the United States from China under cover of the eleven (11) subject entries. *See* Exhibit A.

23. In the entry documents covering these entries, Fortune Energy, Inc. identified the entries as Entry Type Code "01" entries and described the imported merchandise as "Aluminum 5052 Type accessories."

24. On or around November 21, 2018, the Base Metal Center of CBP observed that Fortune Energy, Inc. and Dual Rack advertised the subject merchandise on its websites as "6005" products (*i.e.*, series 6 aluminum).

25. CBP took samples of the subject merchandise from two entries—Entry Nos. 9XR00160504 (entered February 14, 2019 and reported on or around February 28, 2019) and 9XR00162633 (entered December 2, 2018, and reported on or around March 11, 2019)—made by Fortune Energy, Inc., for testing by the CBP laboratory.

26. On February 13, 2019, February 28, 2019, and March 11, 2019, the CBP laboratory facilities in Los Angeles and Chicago reported that, upon conclusion of the testing, the chemical composition for the subject merchandise in those samples (*e.g.*, the Dual Rack, L Shaped Silver Rail, Flash L Kit, Swivel Angle Bracket, Lite Metal Rail, etc.) showed that the merchandise consisted of series 6 aluminum alloys. More

specifically, the laboratory reports showed that the magnesium level in the merchandise constituted less than two percent of its chemical composition.

27. The laboratory reports showed that one of the tested products (a Dual Rack Lite Flash Kit) consisted of a series 1 designation alloy.

28. Consequently, on January 13, 2021 and February 9, 2021, CBP advised Fortune Energy, Inc. that based on laboratory analysis the subject merchandise had been determined to be manufactured from series 6 aluminum alloys subject to antidumping and countervailing duties. CBP informed Fortune Energy, Inc. that the relevant entries had been changed to Entry Type 03, that future entries containing merchandise similar to the tested merchandise should be filed as Entry Type 03, and that Fortune Energy, Inc. should submit estimated antidumping and countervailing duties, pursuant to the Antidumping and Countervailing Duty Orders, for the merchandise.

29. During the time period when the imported merchandise entered the United States, the antidumping duty rate for series 6 products, as required by the Antidumping Duty Order, varied between 85.96 percent and 86.01 percent *ad valorem*.

30. During the time period when the imported merchandise entered the United States, the countervailing duty rate for series 6 products, as required by the Countervailing Duty Order, was 7.37 percent *ad valorem*.

31. By identifying the subject entries as Entry Type Code "01" entries and describing the imported merchandise as series 5 aluminum or "5052" products, Fortune Energy, Inc. did not pay antidumping or countervailing duties for the imported merchandise.

32. As a result of the incorrect identification of the imported merchandise as series 5 aluminum or "5052" products, Fortune Energy, Inc. paid less in duties and fees on these entries than it would have paid if it had accurately identified the imported merchandise as series 6 aluminum products.

33. As a result of the incorrect identification of the imported merchandise as series 5 aluminum or "5052" products, the United States was deprived of lawful duties and fees in the amount of approximately $60,002.15.

34. CBP has exhausted all administrative remedies.

35. To date, Fortune Energy, Inc. has not paid any amount of the penalty owing.

## COUNT I

36. The allegations contained in paragraphs 1 through 35 are realleged and incorporated herein by reference.

37. Section 1592 of Title 19, United States Code, imposes civil penalties for material false statements or acts, or material omissions, made in connection with the introduction or entry of merchandise.

38. Fortune Energy, Inc. entered or introduced the imported merchandise into the commerce of the United States by means of a document or electronically transmitted data or information, written or oral statement, or act which was material and false, or by means of an omission which was material. *See* 19 C.F.R. Pt. 171, App. B(B).

39. Fortune Energy, Inc. falsely stated or described the aluminum extrusions were made from aluminum alloy with a 5052 description or related Aluminum Association series 5 designation, falsely used Entry Type Code 01 to indicate that the

9

merchandise was not subject to the antidumping or countervailing orders, and failed to reference the antidumping and countervailing duty orders or amount of applicable antidumping and countervailing duties due on the entry documents, and did not pay the antidumping and countervailing duties due.

40. The false statements, acts, or omissions described in paragraph 39 were material because they had the potential to affect determinations made by U.S. Customs and Border Protection concerning the liability for duties.

41. The material false statements, acts, or omissions described above constitute negligent violations of 19 U.S.C. § 1592(a).

42. As a result of the negligent violations of 19 U.S.C. § 1592(a) described above, pursuant to 19 U.S.C. § 1592(c)(3), Fortune Energy, Inc. is liable for a penalty for negligence in the amount of approximately $120,004.30, which represents two times the lawful duties, taxes, and fees of which the United States was deprived.

## PRAYER FOR RELIEF

**WHEREFORE**, the United States respectfully requests that the Court enter judgment for the United States against defendant Fortune Energy, Inc, for (1) a civil penalty of $120,004.30, for violations of 19 U.S.C. § 1592(a)(1)(A), at a culpability level of negligence, plus interest provided by law; and such other relief as this Court deems just and appropriate.

Respectfully Submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

                PATRICIA M. McCARTHY
                Director

           By: /s/ Justin R. Miller
                JUSTIN R. MILLER
                Attorney-In-Charge
                International Trade Field Office

Of Counsel:                       /s/ Augustus Golden
EDWARD GREENWALD            AUGUSTUS GOLDEN
Office of the Assistant Chief Counsel    Trial Attorney
U.S. Customs and Border Protection     Department of Justice, Civil Division
                                        Commercial Litigation Branch
                                        Civil Division
                                        U.S. Department of Justice
                                        P.O. Box 480
                                        Ben Franklin Station
                                        Washington, D.C.  20044
                                        Telephone:    (202) 507-6089
                                        Facsimile:    (202) 307-0972
                                        Augustus.J.Golden@usdoj.gov

                                        *Attorneys for Plaintiff*